May it please the court, my name is Dustin Marcello and I represent Gerald Delemus. The issue for this court and for this panel is the question of whether or not Brady v. First Maryland applies to the plea bargaining process and to plea negotiations and ultimately to plea agreements. Now there is a number of other issues that are raised in the briefs including the really unusual plea colloquially, whether or not Mr. Delemus properly allocated his guilt, ineffective assistance of counsel, knowingly involuntariness of the plea, and I don't want to make light of any of those issues, but I think they're covered in the briefs. What I think is important today and what we should be discussing today is the right to Brady under the plea negotiation and plea process. Mr. Marcello, there was a certificate of appealability only on one issue, so that was whether Mr. Delemus, I hope I'm pronouncing your client's name correctly, is it Delemus or Delemus? Delemus. Whether Mr. Delemus entered his plea knowingly involuntarily because of the subsequent discovery of Brady violations and the other issues, ineffective assistance of counsel and the validity of his plea colloquy, I don't believe are before us. Do you see that differently? Yes, the knowingly involuntariness requirement of the plea negotiation and plea process necessarily involves the knowledge of whether or not you're aware of the exculpatory evidence against you. And so what we have is twofold, is we have a subsequent Brady violation, and it wasn't subsequent, that Brady violation was throughout the case. And before we even get started, a panel's already determined that the information that we're discussing here today, including more specifically as to Delemus, the use of sniper rifles, was something that he had mentioned for years, was in fact exculpatory Brady evidence. It was enough to overturn the trial of the co-defendants, and it was enough to dismiss all the other cases in the interest of justice. But that was, so, Mr. Marcello, we're aware of the recent panel decision, which did find that the Brady violations were potentially exculpatory as to Clyde and Bundy and some other defendants, but that opinion didn't discuss your client. So I think what we need to focus on is how that Brady violation affected Mr. Delemus and his decision to plead guilty. I mean, that's sort of the crux of the we kind of have to start at the beginning, which is Brady versus Merrill. Brady wasn't a decision that announced some type of new rule or requirement. It was just basically a recognition of the criminal justice system, the role of prosecutors, and the role of the government when prosecuting criminal defendants. And essentially what it, the main crux of it is, is that prosecutors have a duty over and above just winning cases. They have a duty of justice. B of E, the government, there's also a requirement that before you deprive somebody of life, liberty, or property, that the person receive due process under the law. That's all Brady recognizes. Now the question of the exculpatory nature of a particular piece of information turns on whether, what are the issues in, at contention in the particular case. As I noted in my brief, there isn't a single illegal act that was alleged to be committed by Mr. Delemus. Instead, what you have is, whether or not his otherwise legal acts were made illegal by an illegal intention. And specifically, the question is, did he travel to Nevada in order to stop BLM officials from executing a valid court order on cattle here in Nevada? Or was he here because there was a, he believed, a genuine threat against the Bundy family and the 1,500 other protesters that were there at the Bundy Ranch, non-private property, and whether or not he felt that there was a danger to them, that his presence would alleviate that danger and that concern. So this entire case is based off of the intention and his mindset when he came to Nevada, and when he arrived in Nevada, and when he remained in Nevada. Okay, so Mr. Marcello, in your brief, you assert that Mr. Delemus had a phone conversation with Mr. Clyde and Bundy. Yes. And Mr. Bundy told him things that were happening, I think this was around April 4th or so, and then Mr. Delemus relied on that conversation. That was his basis of knowledge. He relied on that conversation to decide that he would travel to Nevada. So the evidence at issue in the other case related to whether the government did, in fact, have a surveillance camera and did have snipers near the Bundy Ranch, or whether Mr. Bundy and others were lying about that fact. But I'm not understanding how that impacts Mr. Delemus, because Mr. Delemus just relied on what Mr. Bundy told him. Whether it was true or false doesn't seem to have mattered, because he would just relied on the statement. So how did that evidence impact Mr. Delemus's decision to plead guilty? It's central to the issue to plead guilty. If somebody tells you on the phone, hey, you need to come out here, they're pointing sniper rifles at my family, and that's your intention when you travel to Nevada. Now, the prosecution moves forward, and guess what? No evidence has ever produced that shows that there was, in fact, sniper rifles pointed at your family. It would lead a reasonable person to believe, you know what, maybe Clyde and Bundy and the Bundys were misleading. Maybe they weren't correct. But how does that affect his intent? Even if Mr. Bundy was misleading him, if he had a legitimate intent to help Mr. Bundy from excessive force, it doesn't matter whether or not it was excessive force used. Correct, but the problem is you're viewing it in the context of his intention when he came to Nevada. I'm viewing it as his decision to plead guilty. When all of a sudden you're told, hey, by your attorney, by the judge, there is no evidence that there were sniper rifles pointed at his family. That greatly affects your perception of your chances at trial. And again, the way that we can view this through the lens, there's actually three ways you can view this. One is a kind of a contractual obligation. Okay, via the state and Mr. Delimas, they're reaching an agreement. And there is a necessary and important fact, and again, the contentious issues that are that are part of the case. And in this case, it was his intention when he traveled to Nevada, and they were purposely and recklessly, whatever version of words that you want to use withholding that information that shows that the information that shows that there was, in fact, sniper rifles, they were, in fact, pointed at this family. And then when he traveled to Nevada, that information was correct. Now, during the trial process and during the plea process, if you withhold that believe, you know what, I may have been misled by the Bundy's. They may not have been telling me the truth. So I better plead guilty. Otherwise, I may take the day that my intention will be misconstrued because there's no evidence to support it. When in fact, the entire time, there was evidence that supported that exact contention. And Mr. Delimas, we don't have to guess. He said it during sentencing. He said it during his withdrawal of his plea. And by the way, he moved to withdraw his plea just three months after he entered. And he stated that central to that contention was about sniper rifles pointed at this family. And the government continued to say that there was no evidence of it. So, I guess the issue that I'm struggling with, Mr. Marcello, is that I understand how that rape violation was relevant and potentially exculpatory to Mr. Bundy and his sons and a couple other defendants involved in the other case. I'm still having a hard time figuring out how it was relevant to Mr. Delimas and his plea. Because he went there, his explanation was he had been told by Mr. Bundy that there were snipers pointed at his family at the ranch. Whether that was true or false, that's the information he had. So I don't see how it... I'm wondering if you can just explain a little more why it is what a plea is. It's foregoing your right to establish that fact of trial. But that's not a fact that would be an issue in his case. He testified and said that he relied completely on what Clive and Bundy said to him. Whether Clive and Bundy was telling him the truth or not, I'm just not sure how that's relevant to his decision. Because I thought the evidence was that he was sort of a mid-level organizer. He was running patrols around the property. He was giving instructions to other people. I mean, there was other evidence that would support the charge of him being involved in a conspiracy to interfere with government agents. Which is different from whether Clive and Bundy was telling him the truth or not. Not a single person was ever convicted in this case of conspiracy, number one. Only two people that went to trial were found not guilty of the conspiracy charge. But number two is, the plea process is about your perception of whether or not you may be convicted at trial. The perception of whether or not he was there to protect people, or whether he was there for a lawful order, is going to largely depend on the politics of the people viewing the people that are doing these actions. Okay? And that has been a common theme throughout the case. Now, if you're entering a plea, your decision to enter a plea and plead guilty is based not just on what you think you might know, but on your perception of the strength of the government's case against you. The last thing you want to do, and especially when it's based on intention, all of those items that you mentioned. Now, one of those facts is illegal, if the intention is to protect people, instead of the intention being to prevent the government from executing a judgment on the count. Again, those acts were all legal. Being at the camp, being armed, being there protesting, the whole thing was legal. The only question was the intent. And so when the government withholds evidence that would be relevant to your intent, it affects your perception of your chances to go to trial. And they do that wrongfully, because they do in fact have evidence that would support your contention, that would lead your attorney to tell you, yes, there is evidence that supports what you claim happened and what you say your intention was. And again, that's why we have to look at two of these things. I mentioned the contractual, but also that just the general idea of discovery, generally. Nowhere else in any type of controversy brought before courts are people allowed to withhold relevant information, material information, and not suffer consequences for it. Mr. Marcella, his defense counsel requests that specific information, proof of the snipers? So two things, is that there was a general order to provide all exculpatory information, number one. But number two, there was an ongoing duty in the plea agreement that anything that went to guilt or punishment be produced by the government, okay? And this definitely went to punishment, because the judge told him that sentencing, I think you're a vigilante, because there's no evidence. I think you're not being fought right with the court, because there's no evidence of these sniper rifles of people being in danger, and when in fact there entirely was. And Mr. Myrie, who is there, the prosecutor, he was knee-deep in all of this, in preventing disclosure of all of this evidence, with agreements with Mr. Wooten, with agreements with Dan Love. All of these people were brought together to prevent this information from coming out. And so Mr. Marcella, you're focusing a lot on whether there was in fact a Brady violation, which has already been helpful to us. I'm sorry, but we need to really focus on your client and what the implications are for his plea. You said no one was convicted of conspiracy, but your client pled guilty to conspiracy to commit an offense against the United States. And also interstate travel and the aid of extortion. So what I want to know is, what was the conspiracy to commit offense against the United States? Was it, I mean, the charge, the charge, and why he pled? Was it with government officials and their duty? Was it something else? Correct. That was what the allegation of the conspiracy was, that they were preventing illegal actions of the BLM by either his presence. And you got to understand, he never came in contact with a federal agent. I mean, over and above him being present with 1,500 other people, in the overall appearance of that, there was no issue. But again, and I think we're getting away from this, in United States v. Ruiz, the Supreme Court found that there was no Brady requirement as it was in the impeachment evidence. But in subsequent decisions, there have been... Mr. Marcello, I'm going to stop you again because you're really close to your two minutes, because Brady isn't the dispute. We all understand what it means and why it applies. It's how it applies to your client's decision to plead guilty. And it certainly does apply in the plea context. And the issue is, would it have made a difference in his decision to plead guilty? That's the focus. Absolutely. Three months after he enters his plea, he seeks to withdraw. And seven months later, he seeks to withdraw. Throughout the entire time, he tells you, I thought this family was in danger. I thought my intention was to protect people, not cows, not cattle. And during that entire time, for seven months, and during that entire time, he's told there's no evidence of that. If you try to go to trial, you will lose because there's no evidence to support that conclusion. Again, you can't enter a plea knowingly and voluntarily if you're not aware of the essential facts that show that your intention was valid. And number Yes. But people don't enter pleas necessarily based on what they believe may be true. They base it off of what they think the government may be able to prove against them. And I think the decisions in Missouri v. Frye could be... But Mr. Michello, he had no personal knowledge. I mean, he testified he could only rely on Mr. Fundy. Which is why he needed that information that the government that it did in fact take place. That's the whole point. If somebody tells you that something was going on, and that was your intention of why you came out, and then the government claims there's no evidence that it ever occurred, you would think that you were hoodwinked by them and say, geez, I may lose that trial even though I thought so, because there's no evidence to support what I claimed. The government's gonna call me a liar, and I'm gonna lose. Okay, so you're at like 20 seconds. Did you want to reserve your time? I just had the two minutes, but... Well, that's the issue. You don't get additional time. It's not Yeah, I thought I reserved two minutes. We'll see, but typically that's not how it works. So, but if you want to stop now, you've got a little bit of time left. I thought it was 13 minutes. I apologize. I had asked for two minutes at the beginning. I thought they just said it. Right, and I understand. I told you, watch the clock. If you keep talking up to the end, you've used up all your time. You have no time to reserve. So, let's let's turn to Miss Olson. Good morning, Your Honors. Nancy Olson, appearing on behalf of the government. May it please the Court. Judge Navarro did not commit clear error when she found that these discovery documents were not helpful to Mr. DeLemus, and that's because, as Judge Beatty pointed out, it doesn't matter whether or not what Clive and Bundy said to DeLemus was true or false. He had the information he had, and he acted on that information. So, unlike the allegations against those main four defendants, where it was alleged that they used deceit and they lied, no such allegations were brought against Mr. DeLemus. So, if you look at the information he had, Bundy called him and he helped come to Nevada, and he did. The problem for DeLemus is what Judge Navarro found. There was never any sort of show of excessive force that justified what he did. So, just because you get a call and and Clive and Bundy says, I need help, and there's snipers surrounding my property, if all he did was travel there and sit with Bundy, that would have been one thing. But what he did was he joined and participated in the conspiracy, and he committed interstate travel in aid of extortion. And the facts he admitted at his plea agreement fully support that. So, it's not clearly erroneous for Judge Navarro to say, just because someone called to tell you what they believe is happening, you can't then gear up and become heavily armed, travel across the country with other people that you've recruited to go with you, stop and live fire your weapons to make sure that they're going to work, all the while saying that the reason that you're going, the reason that you're doing is to interfere with the government. So, there's a big disconnect between what he was told by Clive and Bundy. Was there evidence that Mr. DeLamas said that he was going to interfere with the government? I didn't see it anywhere. Yeah, so it was his statement. He said he was going there to be on the offense. He said he wanted to stop a lawless government action against citizens, and he admitted that things could go sideways and turn violent by his presence. And so, to answer your Honor's question, the reason why it's not quite as obvious, of course, he pleaded guilty, he didn't go to trial. We have a little bit of a limited record here, but the way that I can point you to it is two places. One is the factual admissions he made under oath at his plea agreement, and it's at page 140 of the record, the factual basis for that plea. And then, in addition, the information the government had available that it could have used had DeLamas gone to trial, and we put that in the record in the supplemental excerpts, all of the facts we had in support of that plea agreement. So, just because someone calls you and says, I want you to come here, doesn't mean that you get to go there and interfere with the government. Maybe you get to go there and see what's happening. Maybe if you literally see a BLM officer pointing a gun at Clyde and Bundy, that's another matter, because then maybe he could raise some kind of self-defense. But there was never any information that he had that warranted him to travel with that intent to interfere with the government. And he tries to detract from his actions, his admissions, and his own recorded statements by saying, well, what I really had was a protective intent. But he's talking about having some sort of pure motive, where he's saying, well, deep in my heart, what I wanted to do was protect that family. And that's fine, but having some sort of motive is different than the intent of what you're going to go do. And his intent was to go and interfere with the government, and we know that because he said so. Does the charge include recruiting other people to join him? Was there any aspect of the charge that involved that? Or was it, as Mr. Marcel said, focused on an attempt to interfere with the government? No, the charge does not as far as trying to discern his intent from his actions. So I think it's one way you could study what his intent was. Because the question here, Judge Navarro found that this information was not helpful to de Limas, in that it wouldn't have changed the way he looked at the case, or wouldn't have helped him be exonerated at trial. So it wasn't radiated to him, it wasn't helpful as to him. Therefore, it doesn't undermine the voluntariness and intelligence of his plea. And so with regard to the comment I made about how he brought people with him, it doesn't matter. Because if he had documents that said what the tier one defendants had, that Clive and Buddy saw some officers with guns who he believed to be snipers, again, de Limas reacted the way that he did, and never had any show of excessive force that would have warranted him to purposely travel to Nevada to interfere. So are you saying that if he had seen the photo pictures, then that would have been a show of excessive force that would have, that would have, I guess, provided for his, for de Limas' defense? No, just to clarify on the facts here, there was no excessive force finding found ever throughout this entire case. So with regard to Judge Navarro's findings for the tier one defendants, she found that even on the day of that armed assault, when all the people were in the wash, and there's a picture of that in our answering brief in this case, even during that assault, there was no excessive force by the government, because the government was standing by doing, carrying out lawful court orders, they were allowed to have their service weapons and that de Limas called Bundy and heard from him, whether it was on April 12, when that armed assault took place, the facts show that there at no time did any government agent engage in excessive force. So that's the problem for de Limas' self-defense or defensive others theory, because without that, it's not going to be a valid defense for him. And in addition, the Supreme Court said in Ruiz that when you're looking at the Brady nature of information and whether it's helpful to a particular defendant, it doesn't apply to impeachment and affirmative defense arguments that a defendant wants to make anyway. We're talking about the core of someone's guilt. Do these facts that are available, or maybe in this case became available later, do they make it so that a defendant can challenge the core of their guilt? Because under this court's decision in Sanchez, the whole point is to see whether there would be an effect. And if these are just some facts that are out there, but it wouldn't have impacted the charges that you decided to plead guilty to, and it wouldn't have in any way changed the evidence that existed as it related to you and as it related to your intent, then it can't be Brady as to you. And there's no prejudice because one of the things that Mr. Delimas has to show here under Sanchez is a objectively reasonable likelihood that he would have gone to trial instead of pleading guilty if he had those discovery documents that the tier one defendants got. But as another panel in this court made clear in its published decision, the specific reason it was relevant and the court found favorable to those defendants. And again, as Judge Brady pointed out, that just the truth or falsity here doesn't matter. Delimas had the information he had, and he acted on that information. He had a comment from Clyburn Bundy. There was never any excessive force, and he decided to come to Nevada to interfere with the government, and that is what was unlawful by his actions. Ms. Olson, if the government's theory against Mr. Delimas was the same as or overlapped with its theory against Mr. Bundy, wouldn't that make that Brady evidence relevant to Mr. Delimas as well in his decision to plead? I mean, are you saying they had different theories against these defendants, or is there any overlap in the theories of criminal liability? There's overlap in the sense that they were joined together for charges, and some of the charges were that were related to group liability, like conspiracy, for example, aiding and abetting liability, for example. However, the sole reason that the other panel of this court in the published Bundy decision found that information helpful to the other defendants was based on the government's theory of deceit by those four individuals. So there's sort of the whole overarching case, and one part of it was this got started by the four people who made certain statements, recruited, then it turned into this bigger event. And so the published decision made very clear to make a distinction that, one, it was only applicable to those four defendants, and two, it was specifically applicable to them because of very specific overt acts in the superseding indictment where they were accused of deceit. So nobody else was accused of using deceit to recruit. They all came based on that information they received, and then they chose how they were going to proceed with that information. And that gets us to where Mr. Delimas was. Did he just come here? No. He had the intent to come here to interfere with the government, and he had no right to do that, even if he had a call for help that, hey, I think there's some officers with guns. I believe them to be snipers. I want you to come here. There was no excessive force that warranted him doing what he did, and that's where the criminal act comes from in Delimas's case. And regarding overlapping liability, if you look at what Mr. Delimas pleaded guilty to, count one, which was the conspiracy against the United States, the specific overt act that was admitted by him as part of his involvement and joint liability in that conspiracy was the assault on April 12th. So it had nothing to do with any of this earlier activity or statements or what people saw regarding Mr. Delimas's camera or potential snipers or anything like that. And so when he pleaded, he pleaded to facts that have never been disputed even to this day. So that assault on April 12th, nobody disputes that it took place. Now, of course, the tier one defendants disputed why they got to where they got, but that's sort of beside the point for Delimas because nothing about what has happened in the discovery world, the Brady world, to this day, changes the fact of that April 12th assault. And Delimas's factual admission that he agreed to participate in this conspiracy. He agreed to come here and help Clive and Bundy and the overt act was that assault. That count remained sound. He wasn't even in Nevada on the day of the assault. No, he wasn't. But under the elements of 371 conspiracy, which are laid out in the plea agreement, he has to agree to join. He has to understand what the purpose is. And then one defendant or sorry, one conspirator has to commit one overt act. And so I just point out that the overt act that Delimas admitted was committed as part of his conspiracy liability was something that nobody to this day is disputing. So that remains sound. So are you saying, I'm sorry, go ahead. I was just looking at the superseding indictment, and it says that the leaders and organizers of the conspiracy use deceit and deception. So I thought Mr. Delimas was considered a middle level organizer. So couldn't he have been considered part of that allegation? No, your honor, he wasn't. There's further delineation within the paragraphs of the superseding indictment that splits people into three different groups. So we have the sort of the architects and the leaders and organizers of the conspiracy itself. Then we have the mid-level leaders and organizers. And the reason that they were called that is what happened a little bit later. And for Delimas's example, remember when he came out to the Bundy property, he organized armed patrols and he was doing checkpoints and he was using his military skills to tell other people what to do to kind of keep that what they were trying to do to keep the show of force and the interference up so the BLM wouldn't come back. And so he falls into that group. And then the third group was people who were just involved more or less on the day of the standoff with armed show of force against the agents in the wash and on the freeway bridge. And so if you read the specific indictments as to Mr. Delimas in the superseding indictment, as well, if you read how Judge Navarro split them into those three groups, factually, it's clear that he's in group two. So even if he hadn't pleaded guilty and he had decided to stay in this case longer, under no circumstance would he been in that group with those four defendants who were, because the distinction is remember three of the four lived at the ranch that was their property and they're the ones saying, here's what's happening here. One of the other ones was someone who came quite early. And so the district court found relevant and found helpful to those four defendants, all of the stuff that was happening early on. And because she said, look, if you had more information about what was happening early on, that would have validated your claimed fear and your claims need for support and those sorts of things, then you could have made that argument better to a jury. And so unless you were there during those early days, which was well over a week before the actual assault, that information wasn't particularly helpful or relevant to you because it didn't, you didn't see, you weren't there and you didn't see any of that. And then too, you didn't make any specific statements that then the government accused you of being deceitful by making. I think earlier you said there was no charge for recruiting for Mr. Delimas, but I was just looking at the indictment again. It does say he recruited, organized, trained and provided logistical support to gunmen and other followers. So it does seem like the government did accuse him of recruiting. That's correct, your honor. And I'm sorry if I misspoke, but I think the distinction that I need to make is recruiting around April 4th through 12th and the 12th is the assault recruiting after they're all still there and kind of trying to keep up those activities and that defensiveness. And so the recruiting, the original recruiting was by the court of Clyde and Bunny and his sons and one other defendant, because they're there by themselves and they're saying, we need your help. And they're, they're making different statements and sending out different information to get people to come to the ranch and they need to add in the hundreds. And then once you had those people there and Delimas arrives shortly after the assault early morning hours of April 13th, then he does some recruiting and organizing because he's saying, all right, we got rid of the BLM for now, but we think, you know, to make sure that they don't come back, to make sure they don't get the cows, to make sure they don't come on the property, to make sure they don't do anything, whether they're entitled to or not under their lawful court orders, under their duties as law enforcement officers, we're going to do these armed patrols, we're going to do these checkpoints, and we're going to make specific statements on the internet, to the media, in reportings. We're going to say that we're here to thwart the BLM, and we're going to, we're going to still continue these actions. So Delimas's recruiting was a and what he did. The initial recruiting that pertains more to the allegations of deceit in the superseding indictment, or just to the family members and that fourth defendant who were in the tier one group, and who were also underlying that published decision by this court recently. Okay, so you are over time, and Mr. Marcello, I'll give you two minutes for you. We're discussing statements without a difference. The tier one defendants went to trial. There was information that came out that was so bad it's still under suit. Okay, the root memo and the other items that came out. If Mr. Delimas did not plead guilty, he'd been sitting at the courtroom at the table during the entire time this case would have been dismissed in the interest of justice. The four defendants, due to the reckless disregard for the constitutional rights of these defendants, was granted by the court. Now, whether we want to split hairs and say, well, it was this issue, that issue, deceit, the bottom line is it was misconduct and it was getting rid of relevant exculpatory evidence and preventing the defendants from knowing. Was Mr. Delimas accused of or charged with recruiting people before he arrived at the and by telling them that the Bundy family was subject to sniper fire? His charge was that he came to with the intent to prevent them from executing a court order to round up cattle. That's not why he came here. He kept saying it during sentencing. He said it during his withdrawal of his plea. And the only statement that the government refers to in his plea is, I was advised to say yes. They had to change the language to make it in the passive voice because he said I'd be committing perjury by agreeing to this. Okay, because what he was looking at was my intent, even though I don't think I can prove it at trial. And that's the problem. The judge, with all due respect, says, I think you would lose a trial. That's great. That's not the question. The question is what I proceeded to trial. There was evidence that showed my intent was true and valid. Whether a jury believed me is up for grabs. But counsel, do you agree that the government's theory against Mr. Delimas is that he recruited after the April 12th incident that you were created to? I'm sorry. Absolutely. 1,500 people at that compound over the course of that month. They're alleging that Mr. Delimas helped recruit them, inspired them to come down, organize them, take your pick. I mean, but again, But it was at April 12th, not before April 12th. Right. He was not in Nevada before April 12th. So he was admitting the facts. He wasn't even aware of it. The government was telling him the truth about it. All right. Thank you, Mr. Marcello. This case will be taken under submission. Thank you, counsel, both for your arguments. They were very helpful. Thank you very much.
judges: Marquez, Bade, Bumatay